## Samuel Gurnea, Appellee, v. Baltimore & Ohio Railroad Company, Appellant.

### Gen. No. 15,139.

1. MASTER AND SERVANT—*who not fellow-servants.* *Held,* under the evidence, that the plaintiff, who was a switchman, was not, as a matter of law, a fellow-servant of members of the crews of switch engines.

2. VERDICTS—*when not disturbed.* A verdict will not be set aside on review as against the weight of the evidence unless clearly and manifestly so.

3. CONTRIBUTORY NEGLIGENCE—*employe alighting from switch engine.* *Held,* that it was for the jury to determine whether or not an employe of a railroad company in stepping from a switch engine and on to an adjoining track was guilty of such negligence as barred his recovery.

4. EVIDENCE—*when admission of immaterial will not reverse.* The admission of immaterial evidence will not reverse unless harm appears to have resulted.

5. INSTRUCTIONS—*when upon quantum of proof not erroneous.* An instruction upon this subject as follows, *held,* not erroneous.

"The jury are instructed that the plaintiff is not bound to prove his case beyond a reasonable doubt, but is merely bound to prove it by a preponderance of the evidence."

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed October 21, 1910.

CALHOUN, LYFORD & SHEEAN, for appellant; CHARLES D. CLARK, of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

Appellee, Samuel Gurnea, recovered a judgment in the Circuit Court against the appellant, The Baltimore & Ohio Railroad Company, in an action for personal injuries alleged to have been sustained by the plaintiff, Gurnea, through the negligence of the railroad company. The company prosecutes this appeal to reverse the judgment, and contends, (1)

that the contributory negligence of the plaintiff precludes
recovery; (2) that the weight of the evidence shows that the
defendant was guilty of no negligence; (3) if there was
negligence on the part of the defendant liability cannot be
predicated thereon because such negligence was not the
proximate cause of the injury, and because such negligence
was omission of duty by a fellow-servant; (4) prejudicial
evidence on behalf of the plaintiff was erroneously admitted;
and (5) an erroneous instruction was given at the request of
the plaintiff.

If the question of contributory negligence on the part of
the plaintiff, and the question of defendant's negligence are
both resolved in favor of the plaintiff, he still cannot recover,
if his injury was caused by an omission of duty by a fellow-
servant. We shall consider, therefore, the fellow-servant
question, first, and then take up the other questions in the
order above stated.

At the conclusion of the evidence the defendant asked
the court to instruct the jury to return a verdict of not guilty.
The court refused to give the instruction, and the refusal is
assigned as error. This with other assignments of error
raised the above stated questions which formed the principal
subject of argument by the counsel on both sides.

The plaintiff was a night switchman employed by the
defendant in its South Chicago yard. This yard extends
from Rock Island Junction, which is south of Ninety-
third street, where the tracks of the defendant leave the
tracks of the Rock Island Railroad, to a point some distance
north of Eighty-fifth street in the city of Chicago. It con-
tains more than thirty parallel switch tracks which run north
and south from the switching leads at the south end of the
yard. On the east side of the yard between Eighty-sixth and
Eighty-seventh streets is a round-house. Just west of the
defendant's right of way are the Illinois Central Railroad
tracks. From Eighty-ninth street as far south as Ninety-first
street, the most westerly track of defendant was used exclu-
sively for the storage of cabooses. The next track to the east
was designated by the witnesses as the main track, and it was

regularly used as a thoroughfare for engines going in either direction. Next east of this main track was No. 1 lead, which ran parallel to the main track from Ninety-third street to a point between Eighty-ninth and Ninetieth streets, where it diverged in a northeasterly direction as a stem from which branched switch tracks numbered from 1 to 9.

Plaintiff had worked for various railroads and for the Standard Oil Company as switchman for about ten years. At the time of his injury he had worked for the defendant as switchman about three weeks. He was a member of a crew engaged in switching out transfers, cars destined for other roads, at the south end of the yard. About 3:30 in the morning of March 23, 1904, a cut of 15 to 18 cars was being pulled out of switch track No. 8 in a southerly direction along track No. 1 or the lead, down to the switch south of Ninetieth street. This switch was to be thrown so as to back the cars north on lead track No. 2. The engine pulling this cut of cars was headed south, and plaintiff was riding on the foot board of the engine. As the switching engine (No. 1141) neared the switch leading from track No. 1 to track No. 2, a little south of Ninetieth street, plaintiff stepped from the west side of the engine and walked in a southwesterly direction across to and upon the track called the main track and stood there waiting for the cut of cars to pass the switch, intending to give the signal to stop and then to pass to the rear of the cars and throw the switch which was on the east side of track No. 1. As the switch engine and cut of cars were proceeding south on track No. 1, road engine No. 1738 was backing south on the track adjoining to the west, called the main track, at a speed estimated by the witnesses at from 4 to 8 miles per hour. This engine struck plaintiff, knocked him down and cut off his right arm.

The evidence shows that the road engines ran from the South Chicago round-house to Garrett, Indiana; that they pulled in their trains on any track in the yard that happened to be clear, and that the distance north in the yard the trains were pulled depended entirely upon the condition of the yard; that the "main track" was regularly used as one of

the thoroughfares for engines, and for any purpose where business required it; that any of the tracks in the yard might be used by any engine going in either direction at any hour day or night; that incoming trains were put upon any track that the yard master designated, the switch crew and road crews making use of the same tracks in the yards; and road engines in going south from the round-house made use of whatever track happened to be open. The evidence further shows that the engine with which the plaintiff was working was a switch engine at the south end of the yard; that certain trains to be switched might be city trains, having some cars to be thrown out of them at the yard, and that while these were being taken from the train by the switch engine, the road engines remained attached to the trains, and after such cars were taken out, proceeded with the trains into the city; but, with reference to such trains the evidence is not clear and there is some dispute as to whether they were brought into the yard in question at the time of the accident. It thus appears from the evidence that the crews of road engines and their trains and switch engines in the ordinary work conducted in the yard were under the control of the yard master in the yard, and used the same tracks in entering and leaving the yard, in making up, handling, switching and breaking up trains.

These are the substantial and controlling facts developed by the evidence, bearing upon the question whether or not the members of the crew of road engine 1738 were fellow-servants of the plaintiff. While the evidence shows that the switching crew of which plaintiff was a member and the crew of road engine 1738, and the crews of other road engines which entered the yard, used the same tracks, the plaintiff testified that there was no working connection whatsoever between his crew and the road crews. The only dispute in the evidence of this statement is in the testimony of the witness Cameron, who speaks of one road train that was not delivered at the north end of the yard. This train arrived every morning and was pulled in on section B, according to his testimony, and for the purpose of taking out

certain cars a switch engine was attached to the south end of the train, in order to protect the crossings, while the road engine remained attached to the train; and after the cars had been taken out the road engine took the train north into the city. But Cameron was uncertain whether this train was handled in this yard at the time of plaintiff's injury, or before or after that time.

In our opinion the evidence, with all legitimate inferences to be drawn from it, is not of such a nature that all reasonable and intelligent men must reach the same conclusion, and hence the relation between the plaintiff and the members of the crew of road engine 1738 was one of fact, and was properly submitted to the jury.

The principle underlying the fellow-servant doctrine and the reasons therefor are fully discussed and the authorities are reviewed in Chicago & Northwestern Railroad Co. v. Moranda, 93 Ill. 302; and in C. & E. I. R. Co. v. White, 209 id. 124; and no useful purpose would be subserved by here repeating what is so well stated in those cases. The facts in the White case, *supra,* are so similar to the facts in this case that we think no discrimination on principle can be made between the cases with regard to the application of the fellow-servant doctrine.

We cannot say, upon a consideration of the evidence upon this issue, that the verdict of the jury was manifestly against the weight of the evidence and should therefore be set aside; nor can we hold as a matter of law upon the evidence that the relation of fellow-servants existed.

The question of negligence of the defendant, and the question of contributory negligence of the plaintiff, were both for the jury, and upon the record in this case we cannot say its findings were against the weight of the evidence. The contributory negligence of the plaintiff, according to the contention of the defendant, consisted in unnecessarily going upon the "main track" when there was sufficient room between the tracks for him to stand in safety and give the signal to stop to the engineer when the rear end of the cut of cars had passed the switch. He had looked to the north

before he stepped off his engine and saw a red light which he took to be a red light on section 8 switch. He had been in the service of the defendant in that yard only a few days, and had never seen this "main track" in use for any purpose, and had never seen any of the large engines of the type of engine 1738 backing out during the nights he was there, and did not know that this engine was backing south at that time, or that it was the practice in that yard to back the large engines out with a red lantern suspended from the back of the tender.

It is clear that ordinary care for his own safety required plaintiff in alighting from the engine to step far enough away from the track to avoid being struck by any projections which might be extending out from the sides of the cars of the train and also far enough away from the train so that the engineer could see his signal. Whether in the night time he was negligent under all the circumstances in stepping upon the next track was a question for the jury. It was for the jury, with all the evidence before it, to determine what reasonable, prudent and cautious men do under the circumstances which they found to exist before and at the time of the accident, and to say by their verdict whether the plaintiff acted negligently or whether his action was in accordance with the course that an ordinary prudent switchman might follow. There are various facts and circumstances shown by the evidence which would warrant the conclusion of the jury on this issue, and we are not justified in setting it aside as contrary to the weight of the evidence.

The negligence averred in the second count of the declaration is the failure to ring the bell of the engine backing south in accordance with section 1733 of article 2 of chapter 55 of the city ordinances of the city of Chicago. General averments of negligence are made in the first count. The cause was submitted to the jury on these counts. Upon the question whether or not the bell of the road engine was ringing, the evidence is conflicting. Three witnesses testified that it was ringing, and seven witnesses that they did not hear it, or that it was not sounded.

It is insisted on behalf of the defendant that greater weight should be given to the positive testimony of the witnesses Rink, Voight and Shulthes that the bell was rung and the whistle sounded than to the negative testimony of the witnesses who did not hear the bell or whistle. This so-called negative testimony is competent, and seems to be equivalent to positive evidence as to the facts about which the witnesses testify. C. & A. R. R. Co. v. Dillon, 123 Ill. 570; P. P. & J. R. R. Co. v. Siltman, 88 Ill. 529. As said in the Siltman case: "Under the conflicting testimony presented, it was certainly the province of the jury to find which was the better evidence and most worthy of belief. The law has made that the duty of the jury, and an Appellate Court ought not to disturb this finding of facts upon conflicting evidence, except where it becomes necessary to do so to prevent palpable injustice in cases where it is manifest the finding is the result of passion or prejudice. That is not the case here.

In our opinion the negligence of the defendant was the proximate cause of the injury to the plaintiff.

It is contended that the trial court erred in permitting the witness Riley to testify that he was touched or struck by the engine some two hundred feet north of the point where the plaintiff was struck. Riley was the conductor of the same train of cars on which plaintiff was switchman at the time of his injury. Riley was seven or eight cars lengths north of the plaintiff and on the west side of his train. He was asked the question: "Q. Did this engine touch you, this road engine?" An objection to the question on the ground of immateriality was overruled. The witness then answered: "A. Well, when I first noticed this engine I had got further over in the track, the main track, and I was looking at my cars with my face more to the southward. The next I noticed the engine was when it was real close to me."

"Q. What did you do? A. I hurried to get out of the way.

"Q. Did it touch you? A. It barely touched me on the shoulder or between the shoulder and the hip."

It appears from the record that the question objected to was not answered, the answer given by the witness not being responsive to the question. Another question was then asked and answered, and then the question first objected to was again asked and the answer complained of was given, without any renewal of objection to either the question or answer. Nor was there any motion made to strike out the answer. We do not think the competency or materiality of this evidence was raised.

Assuming, however, that the evidence was immaterial (which we do not hold), its admission was not harmful in view of the fact the witness had testified without objection that "When I first saw the road engine I did not know it was an engine. It was north of me, and I saw a red light. Then the engine passed me. I was just about at the edge of the east rail of the main track when I first saw the red light."

We are inclined to think the evidence was material for its corroboration of both plaintiff's and Riley's testimony as to the facts that the red light suspended from the tender was mistaken by them for a switch light, and that the bell was not rung or the whistle sounded.

The court gave at the request of the plaintiff the following instruction:

"The jury are instructed that the plaintiff is not bound to prove his case beyond a reasonable doubt, but is merely bound to prove it by a preponderance of the evidence."

The giving of this instruction is assigned for error. In view of what the Supreme Court has said regarding this instruction in Chicago City Ry. Co. v. Nelson, 215 Ill. 436; Consolidation T. Co. v. Schritter, 222 *id.* 364; C. U. T. Co. v. Mee, 218 *id.* 9, and other cases, we cannot hold the instruction erroneous.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

MR. JUSTICE MACK took no part in the consideration of this cause.